## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 16-CR-30017 |
| ) | |
| **LEVONTAE WALKER,** ) | |
| ) | |
| **Defendant.** ) | |

### OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Levontae Walker's Amended Motion for Modification of Sentence (d/e 47) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is DENIED.

### I. BACKGROUND

On November 10, 2016, Defendant Levontae Walker pleaded guilty to one count of interference with commerce by threats or violence in violation of 18 U.S.C. § 1951, one count of possession or use of a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c) and (c)(1)(A)(iii), and one count of possession of a weapon by a felon in violation of 18 U.S.C. §§ 922(g) and 924(a)(2).  On April

21, 2017, the undersigned District Judge sentenced Defendant to a total of 156 months' imprisonment, consisting of 36 months on the first and third count to be served concurrently with each other and 120 months on the second count to run consecutively to the sentence imposed on the first and third counts.  Judgment, d/e 37.  The Court also imposed a three-year term of supervised release on each count to be served concurrently.

Defendant has filed a pro se motion for compassionate release, d/e 45, pursuant to 18 U.S.C. § 3582(c)(1)(A), seeking compassionate release due to his health issues and the COVID-19 pandemic.  Following the appointment of the Federal Public Defender, Defendant filed the Amended Motion for Modification of Sentence, d/e 47, now before the Court.  According to the Amended Motion, Defendant reports having chronic asthma, hypertension, and a body mass index (BMI) that qualifies as obese.  Am. Mot. Modification of Sentence 3-6.

The Government has filed a Response Opposing Defendant's Motion for Compassionate Release, d/e 48, arguing that Defendant is not entitled to a reduction in his sentence.  Defendant has also filed a Reply to United States' Response Opposing Defendant's

Motion for Compassionate Release.  d/e 50.

Defendant also filed a Supplement to Amended Motion for Modification of Sentence, d/e 52, bringing the Court's attention to a compassionate release case from the District Court of Maryland in which the Government conceded that obesity constitutes an extraordinary and compelling reason warranting a reduction in sentence in light of the COVID-19 pandemic.  Id. at 2.  The Government subsequently filed a Response to Defendant's Supplemental Motion for Compassionate Release, d/e 53, conceding that Defendant's BMI of over 30 constitutes an extraordinary and compelling reason under recent guidance issued by the Department of Justice (DOJ).  The Government argues, however, that Defendant is not entitled to a reduction in sentence based on consideration of the factors set out at 18 U.S.C. § 3553(a).  Id. at 2.

Upon consideration of Defendant's Supplement to Amended Motion for Modification of Sentence and the Government's response, the Court ordered the Government to produce the DOJ guidance referenced by the supplement and the response.  See Text Order, Aug. 3, 2020.  In response to that text order, the Government asserts that disclosure of the DOJ guidance is not

necessary to the resolution of Defendant's motion for compassionate release and also that the guidance is not subject to disclosure under the attorney work-product privilege. Resp. to the Court's Order to file Dept. of Justice Guidance 3, d/e 54. Finally, Defendant filed a Supplemental Authority Supporting Defendant's Motion for Compassionate Release, d/e 55, advising the Court of out-of-circuit authority concerning the grounds that can be considered on a motion for compassionate release.

According to Defendant's Amended Motion, if released, Defendant plans to live with his fiancee in Milwaukee, Wisconsin. Am. Mot. Modification of Sentence 7. The release plan investigated by the United States Probation Office, however, contemplates Defendant living with his cousin in Sugarland, Texas, if he is released from custody. Probation's Mem. 1. Defendant's cousin's residence in Sugarland is proposed as a less desirable alternative to his fiancee's home in Milwaukee in the Amended Motion. See Am. Mot. Modification of Sentence 7. The Probation Office, in a Memorandum addressing Defendant's request for compassionate release, determined that Defendant's cousin's residence is suitable. See Probation's Mem. 2, d/e 51. The proposed Milwaukee residence

is not addressed.

At the time Defendant filed his Amended Motion for Modification of Sentence, he was serving his sentence at FCI Pekin in Pekin, Illinois. According to the Bureau of Prisons' (BOP) website and the most recent correspondence from Defendant though, Defendant has since been transferred to USP Florence High in Florence, Colorado. See Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed November 23, 2020).

Because Defendant submitted a request for compassionate release to the warden of FCI Pekin prior to his transfer to a different BOP facility, the Court directed the parties to brief the effect of the transfer on the exhaustion requirement in the compassionate release statute. See 18 U.S.C. § 3582(c)(1)(A) (referring to "the lapse of 30 days from the receipt of [a request for compassionate release] by the warden of the defendant's facility"). In response to the Court's order, the parties filed a Joint Position on the Defendant's Exhaustion of Administrative Remedies, d/e 57, in which the parties "agree that the defendant's transfer from one BOP facility to another does not affect the issue of exhaustion." Joint Position 2

(citing United States v. Davidson, 2020 WL 4877255 at *6 (W.D. Pa. Aug. 20, 2020)).

Defendant's projected release date is October 24, 2026. Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed November 23, 2020). According to the BOP website, as of December 8, 2020, USP Florence High has thirty-five active confirmed inmate cases of COVID-19 and thirty-four active confirmed staff cases. See COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed December 8, 2020). Eleven inmates and two staff members at the facility have recovered from the disease. Id.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory

language of 18 U.S.C. § 3582(c)(1)(A).  See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of BOP filed a motion seeking that relief.  With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting 30 days from when the inmate made his or her request, whichever is earlier.  The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

In this case, the Government admits that Defendant submitted a request for compassionate release to the warden of what, at that time, was his BOP facility—FCI Pekin—which the warden denied on May 1, 2020.  Resp. 3.  In the parties' Joint Position on the Defendant's Exhaustion of Administrative Remedies, the parties agree that Defendant's transfer from FCI Pekin to USP Florence High does not affect the exhaustion requirement, stating "[t]he defendant's previous exhaustion of his administrative remedies via filing with the warden at the BOP facility in Pekin, Illinois satisfies the exhaustion requirements of Title 18, United States Code, Section 3582(c)(1)(A) in this case."  As the Seventh Circuit has recently noted in the context of compassionate release, "[f]ailure to exhaust administrative remedies is an affirmative defense, . . . not a jurisdictional issue that the court must reach even if the litigants elect not to raise it." United States v. Gunn, --- F.3d ----, No. 20-1959, 2020 WL 6813995 (7th Cir. Nov. 20, 2020).  Therefore, the Court finds the Government has waived any objection to the exhaustion requirement that might be raised in this case and finds that Defendant has met the 30-day requirement pursuant to 18

U.S.C. § 3582(c)(1)(A).

The Court must consider whether "extraordinary and compelling reasons warrant such a reduction" and whether such a reduction is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  Even if extraordinary and compelling circumstances warranting a reduction in a defendant's sentence exist, the Court must then "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable" in order to determine if a sentence reduction is appropriate under the particular circumstances of the case.  18 U.S.C. § 3852(c)(1)(A).  Having considered the relevant factors set forth in 18 U.S.C. § 3553(a), the Court concludes that those factors weigh against reducing Defendant's term of imprisonment.

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons.  Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation.  Social distancing can be difficult for individuals living or working in a prison.  As Defendant notes in his

Amended Motion, the CDC has identified crowding as a risk factor for COVID-19. See Am. Mot. Modification of Sentence 5.

Defendant is a 26-year-old African American male who has been diagnosed with asthma and hypertension. See id. at 4. With a height of 5-foot 7-inches tall and a weight of 198.5 pounds, Defendant has a body mass index of 31. Id. at 5-6; Adult BMI Calculator, CDC, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last accessed November 23, 2020). According to the CDC's current guidance, obesity—defined as a body mass index greater than 30—increases the risk that a person will suffer severe complications from COVID-19. People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed November 23, 2020). The Government concedes that, given the COVID-19 pandemic, Defendant's obesity constitutes an extraordinary and compelling reason that may serve as the basis for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Resp. to Def.'s Supplemental Mot. for Compassionate Release 1. Just

because the Government concedes that a medical condition is an extraordinary and compelling reason does not mean Defendant is entitled to compassionate release.

Although Defendant has been diagnosed with hypertension, the condition appears to be well-managed by BOP medical staff. See, e.g., Clinical Encounter Note, d/e 49 at Page ID 21 (noting Defendant's blood pressure was initially "slightly elevated" but normalized when Defendant was allowed to sit for a few minutes). The CDC has indicated that hypertension may increase the risk of serious illness from COVID-19, unlike the conditions which are known to increase the risk. See People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed November 23, 2020). Despite his hypertension diagnosis, Defendant advised BOP medical staff earlier this year that he does not take the medication prescribed to treat that condition every day. See Clinical Encounter Note, d/e 49 at Page ID 67. The dosage of the medication was subsequently increased, and it appears from the blood pressure checks in the medical records that the condition is being brought under control. See Clinical

Encounter Note, d/e 49 at Page ID 54 (showing blood pressure reading of 135/82 in only blood pressure check since dosage of medication was increased, a significant improvement over previous reading of 162/100 prior to dosage increase).

Similarly, Defendant's diagnosis of asthma is another condition that according to the CDC only might increase the risks of COVID-19, and only when that condition is moderate to severe.  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#asthma (noting that "[h]aving moderate-to-severe asthma might increase your risk for severe illness from COVID-19").  According to the BOP medical records, Defendant has been prescribed an inhaler to treat his asthma.  d/e 49 at Page ID 59.  While the records reflect that Defendant was given a nebulizer treatment when his asthma symptoms were exacerbated by a cold in October 2019, when he returned two weeks later, Defendant advised medical staff that he had not needed to use his inhaler that week.  Clinical Encounter Note, d/e 49 at Page ID 2.

Finally, the Court must consider the factors set out in 18 U.S.C. § 3553(a).  Defendant is currently serving a combined 156-

month sentence for Hobbs Act robbery, possessing or using a firearm during a crime of violence, and unlawfully possessing a firearm as a felon. When Defendant committed the offense for which he is currently incarcerated, he forced a store employee into the back room of the store at gunpoint. PSR ¶ 13, d/e 39. When a struggle broke out between Defendant and the employee, Defendant struck the employee either with his hand or with the handle of the gun. Id. at ¶ 14. Defendant's accomplice to the robbery forced a second store employee to empty the cash register at gunpoint and made threats to the employee's life. Id. at ¶ 15. The accomplice also struggled with the same store employee Defendant struggled with and the accomplice's firearm went off during the fight, although no one was struck. Id. at ¶ 16. After the robbery, Defendant fled the state before he was located and arrested, notably in Milwaukee, Wisconsin, where Defendant proposes to live if he is released from custody. Id. at ¶ 21. Then after Defendant was arrested, he attempted to obstruct justice by having victims or witnesses to the offense change their statements or submit affidavits retracting their statements. Id. at ¶¶ 22-24, 26-27. At the time Defendant committed the present offense, he was on parole

for burglary. Id. at ¶¶ 51, 53. And at the time Defendant committed the prior burglary, he was on probation for an earlier residential burglary. Id. at ¶¶ 50-51.

Defendant has served less than half of the sentence imposed and is not projected to be released until October 24, 2026. Defendant has a lengthy criminal history, including the previously mentioned prior convictions for burglary and residential burglary, as well as theft. Since being incarcerated, Defendant has been employed as a barber, earned his GED, and completed several educational classes. Am. Mot. Modification of Sentence 6, Ex. A (GED), Ex. B (educational coursework). However, Defendant has been disciplined twice for telephone abuse and once for making a sexual proposal or threat. See BOP Chronological Disciplinary Record, d/e 49-1. The most recent infraction for making a sexual proposal or threat resulted in Defendant being placed in isolation and reclassified to high security. See Resp. 13. BOP also classifies Defendant as a high recidivism risk, and since the time Defendant filed his motion for compassionate release, he has been transferred to a high-security facility, presumably as a result of the most recent disciplinary infraction. The Court has considered the factors in §

3553(a)—in particular the need to protect the public from further crimes of the Defendant—and concludes that they do not entitle Defendant to compassionate release. The Court also finds that Defendant is still a danger to the community. The Court, taking all the relevant facts into account, finds that a reduction in Defendant's term of imprisonment is not warranted.

### III. CONCLUSION

For the reasons set forth above, Defendant Levontae Walker's Amended Motion for Modification of Sentence, d/e 47, pro se Motion for Compassionate Release, d/e 45, Supplement to Amended Motion for Modification of Sentence, d/e 52, and Supplemental Authority Supporting Defendant's Motion for Compassionate Release, d/e 55, are DENIED.

Because the Court has determined that the DOJ guidance the Court previously ordered the Government to produce is not necessary to the resolution of Defendant's motion for compassionate release, the Court's text order dated August 3, 2020 is STRUCK.

Lastly, Defendant's Motion to Request Counsel (d/e 56) is DENIED as Defendant is currently represented by counsel. As the

request for counsel may not to be related to Defendant's request for compassionate release, out of an abundance of caution the Clerk of the Court is DIRECTED to send Defendant the Court's standard packet concerning Motions to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody under 28 U.S.C. § 2255.

ENTER:  December 9, 2020

*/s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE